NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| THE SOCIETY OF ST. VINCENT DE PAUL OF SANTA CLARA COUNTY, and WORKER'S COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF LOS ALTOS,<br><br>Defendant. | Case Number C-02-00847-JF<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION<br><br>[Doc. No. 15 & 20] |

On Monday, July 15, 2002, the Court heard argument on Defendant's motion to dismiss and Plaintiffs' amended motion for preliminary injunction. For the reasons set forth below, the motion to dismiss will be denied, and the motion for preliminary injunction will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Society of St. Vincent de Paul of Santa Clara County ("the Society") is a nonprofit public benefit corporation organized under the laws of the State of California with its main office in San Jose, California. Among other charitable endeavors, the Society formerly operated St. Joseph's the Worker Center ("the Worker Center") in Los Altos, California. According to the Society's complaint, the Worker Center provided various support services to day laborers, including counseling, coordinating with prospective

employers, and protecting workers from exploitation. Through the Worker Center, the Society assisted prospective employers by coordinating and training workers and providing facilities. Plaintiff Workers' Commission ("the Commission") is an unincorporated association of day laborers and others whose goals are to defend the rights of day laborers and to address problems faced by them. Members of the Commission are current and former day laborers. The Commission assists its members through dissemination of wage, health and medical information, provision of food, and referral services. The Commission holds regular meetings to discuss issues, set policies and rules of conduct, and hold elections. Defendant City of Los Altos ("the City") is a general law city incorporated in the State of California. Through its City Council, the City enacted the ordinance at issue in this case.

Day laborers are hired as independent contractors on a temporary basis to perform jobs such as gardening, moving, construction work, child care, and house cleaning. Most day laborers are unskilled and earn less than $10,000 per year. Typically, they make their availability for employment known by congregating in particular locations to meet with potential employers such as homeowners, proprietors of small businesses, and contractors. Until recently, one such location was a portion of El Camino Real within the City of Los Altos.

According to a 1999 report of a joint task force of the cities of Los Altos and Mountain View, fifty to one hundred workers gathered each day on the subject portion of El Camino Real. The Los Altos City Council found that these "solicitors" increased traffic congestion by drawing more vehicles to the area, causing vehicles to stop, and distracting drivers. The City also found that congregations of "solicitors" made it difficult for pedestrians to pass and access local businesses.

In July and August 1999, in response to these concerns[1], the City enacted an ordinance adding §§ 9.12.010-9.12.050 to the Los Altos Municipal Code ("the Code"). Section 9.12.020(B) makes it unlawful "...for any person, while standing, sitting, walking, or riding in any nonmotorized conveyance within the public right of way, in a posted no vehicle solicitation zone, to take an action intended to solicit any person traveling in a vehicle within the roadway." Section 9.12.020(A) states: "[i]t shall be unlawful for any person occupying any unparked vehicle, whether driver or passenger, in the roadway in a posted no vehicle solicitation zone to take any action intended to solicit any person standing, sitting, walking or riding in any nonmotorized

---

[1] Plaintiffs note that these findings were added after the original adoption of the subject Anti-Solicitation Ordinance. However, the City has described these concerns as the government interests that the ordinances were intended to address.

conveyance, within the public right of way."

The intent and effect of the ordinance is to prohibit, inter alia, the type of solicitation in which day laborers previously engaged. The Society alleges that as a result of the enactment of ordinance, the Worker Center became overcrowded and the landlord terminated its lease. The Society began operating a temporary center in April 2002 in Mountain View, but the temporary center is inadequate to accommodate demand. As a result of the closure of the Worker Center and other effects of the ordinance, the Society has been forced to devote its resources to finding alternative means for day laborers to meet with employers and to educate day laborers and the community to counteract the effects of the ordinance.

The Commission brings this action on behalf of its members, seeking a permanent injunction preventing the City from enforcing §§ 9.12.010-9.12.050, a declaratory judgment that §§ 9.12.010-9.12.050 are unconstitutional, reasonable attorneys' fees, costs and expenses, and other relief as appropriate. The Society sues on its own behalf, seeking the same relief as well as monetary damages.

## II. MOTION TO DISMISS

The City moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss of the Society's claims on the basis that the Society lacks standing.[2]

### A. LEGAL STANDARD

Generally, the issue to be decided on a motion to dismiss is not whether a plaintiff's claims have merit, but whether the moving defendant has shown beyond doubt that the plaintiff can prove no set of facts entitling it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court's review is limited to the face of the complaint, documents referenced by the complaint and matters of which the court may take judicial notice. In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Ordinarily, a complaint may be dismissed as a matter of law for only two reasons: (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (*citing* 2A J. MOORE, MOORE'S FED. PRACTICE ¶ 12.08 at 2271 (2d ed. 1982)). When a court considers a motion to dismiss, all allegations of the complaint are construed in the plaintiff's favor. Sun Savings & Loan

---

[2] The City originally alleged that Plaintiff the Commission also lacked standing, however, it appears that the City has withdrawn this claim. Accordingly, the Court considers only the standing of the Society.

1 Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir. 1987).  For a motion to dismiss to be granted, it must appear
2 to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved.  Plaine
3 v. McCabe, 797 F.2d 713, 723 (9th Cir. 1986).  Motions to dismiss are generally viewed with disfavor under
4 this liberal standard and are rarely granted.  Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

### B.  DISCUSSION

#### 1.  STANDING IS UNIQUE TO EACH PLAINTIFF

Standing is an individualized inquiry as to each plaintiff and each form of relief sought.  See Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., 528 U.S. 167, 185 (2000) (Plaintiffs "must demonstrate standing separately for each form of relief sought."); Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001).  Plaintiffs argue that because the Commission's standing to sue in this case is undisputed, the Court need not decide whether the Society has standing.  However, because the Society seeks monetary damages in addition to the injunctive and declaratory relief sought by both the Society and the Commission, the City's challenge to the Society's standing is properly before the Court.

#### 2. LEGAL STANDARD FOR STANDING

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies."  Allen v. Wright, 468 U.S. 737, 750 (1984).  Part of this limitation is the requirement that a litigant have standing to bring suit in federal court.  Id.  There are three elements to the standing requirement. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The plaintiff must establish: (1) that it suffered "an 'injury in fact' --an invasion of a legally protected interest which is concrete and particularized," Id. (*quoting* Allen v. Wright, 468 U.S. 737, 756 (1984); Warth v. Seldin, 422 U.S. 490, 508; Sierra Club v. Morton, 405 U.S. 727, 740-741, n. 16) "and 'actual or imminent, not "conjectural" or "hypothetical,"'" Id. (*quoting* Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)); (2) that the injury is "'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'"  Id. (*quoting* Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)); and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. (*quoting* Simon, 426 U.S. at 38).

#### 3. INJURIES ALLEGED

The Society alleges that it has been and will continue to be injured by additional expenditures to combat the practical effects of the challenged ordinance and relocation costs for the Worker Center. Courts have distinguished between organizations with a "mere 'interest in a problem'" and organizations that are required to expend additional resources as a result of a challenged action. Compare Sierra Club v. Morton, 405 U.S. 727, 739 (1972) ("But a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself...") with Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1981) ("Such concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources - constitutes far more than simply a setback to the organizations abstract social interests.") and El Rescate Legal Serv. Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 748 (9th Cir. 1992) ("The allegation that the EOIR's policy frustrates these goals and requires the organizations to expend resources in representing clients they would otherwise spend in other ways is enough to establish standing.").

The Society has alleged that, as a result of the enactment of the ordinance challenged here, it has been forced to re-direct resources and expend additional resources to meet its goals. This injury is legally cognizable, "fairly traceable" to the City's conduct and would be remedied by the injunction requested. Accordingly, the Court concludes that the Society has alleged sufficient facts to establish standing.[3]

### III.  PRELIMINARY INJUNCTION

### A. LEGAL STANDARD

As a general rule, a party seeking a preliminary injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. See Roe v. Anderson, 134 F.3d 1400, 1401-02 (9th Cir. 1998); Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 523 (9th Cir. 1984). These formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. See Roe, 134 F.3d at 1402.

### B.  DISCUSSION

### 1. LIKELIHOOD OF SUCCESS ON THE MERITS

---

[3] Because it concludes that the Society has standing because it has been forced to redirect its resources, the Court does not address the other bases for standing alleged in the complaint.

In this case, Plaintiffs' entitlement to a preliminary injunction depends on their ability to show that the challenged ordinance violates the First and Fourteenth Amendments to the Constitution. In regulating public rights-of-way, government may impose restrictions on speech otherwise protected by the First Amendment only if such restrictions are content-neutral and reasonably restrict the time, place, and manner of the speech. S.O.C., Inc. v. County of Clark, 152 F.3d 1136, 1144-45 (9th Cir. 1998); Ward v. Rock Against Racism, 491 U.S. 781, 790-91 (1989). "[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions [1] 'are justified without reference to the content of the regulated speech, [2] ... are narrowly tailored to serve a significant governmental interest, and [3] ... leave open ample alternative channels for communication of the information.'" Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (*quoting* Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

Here, Plaintiffs concede that the ordinance is content-neutral. On its face, the ordinance applies to any organization or individual, regardless of viewpoint, attempting to solicit in the City's public rights-of-way. Thus, only the second and third elements of the test are disputed in this case. Because it concludes that Section 9.12.020(B) of the ordinance is not narrowly tailored to serve a significant governmental interest, the Court does not address for present purposes whether the ordinance leaves open adequate alternative channels for communication.

**Narrowly Tailored to Serve a Significant Governmental Interest**

**a. Significant Governmental Interest**

Plaintiffs contend that economic well-being of local businesses is not a significant governmental interest. It is true that legislation intended to advance private interests cannot justify a restriction on speech. See Palmore v. Sidoti, 466 U.S. 429, 433 (1984); City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 448 (1985). However, the legislative findings in this case include a specific determination that solicitation in or adjacent to the public right-of-way makes it "difficult for pedestrians to pass and to access local businesses." This finding suggests a legislative concern for the public as well as for the businesses and certainly does not express any undue prejudice in favor of private interests. Moreover, the legislative findings address other concerns, including traffic and public health and safety, which clearly are significant governmental interests. See ACORN v. City of Phoenix, 798 F.2d 1260 (9th Cir. 1986) (finding that concerns of disruptions in the flow of traffic and safety concerns were legitimate government interests); Heffron v. International Soc. for

Krishna Consciousness, Inc., 452 U.S. 640, 650 (1981) ("As a general matter, it is clear that a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective.").

### b. Narrowly Tailored

To be narrowly tailored, a governmental regulation "may not burden substantially more speech than necessary to further [its] interests." U.S. v. Baugh, 187 F.3d 1037, 1043 (9th Cir. 1999); Ward v. Rock Against Racism, 491 U.S. 781, 799-800 (1989). This does not mean that a regulation must be the least restrictive means of furthering governmental interests. Baugh, 187 F.3d at 1043; U.S. v. Albertini, 472 U.S. 675, 689 (1985). "Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Ward, 491 U.S. at 799 (*quoting* United States v. Albertini, 472 U.S. 675, 689 (1985)).

Section 9.12.010 defines "solicit" as:

> any request, offer, enticement or action which announces the availability for or of employment, the sale of goods, or a request for money or other property; or *any request, offer, enticement or action which shows intent or desire* to purchase or secure goods or employment, or to make a contribution of money or other property. Solicitation shall include participation in discussions undertaken in response to the solicitation by another person. A solicitation *shall be deemed complete when made* whether or not an actual employment relationship is created, a transaction is completed, or an exchange of money or other property takes place.

(emphasis added). The Court concludes that even as limited to "no vehicle solicitation zones," Section 9.12.020(B) is not narrowly tailored because it burdens more speech than necessary to further the significant governmental interests identified by the City.[4] Because solicitation is so broadly defined, and because the ordinance purports to regulate not only the roadway but also the entire sidewalk area, the ordinance on its face restricts protected as well as unprotected speech. An individual standing on a sidewalk or driveway may violate the ordinance by taking *any* action intended to solicit anyone traveling in a vehicle in the roadway, whether or not the solicitation is intended to induce the driver of the vehicle to stop or slow down illegally and whether or not the solicitation affects prospective patrons' access to nearby businesses.

For example, the ordinance would appear to apply to an individual standing on the sidewalk with a sign reading "safely and legally park around the corner if you need a worker." Such conduct does not appear to

---

[4]There is insufficient evidence in the present record to support Plaintiffs' contention that the other Sections of the ordinance are not narrowly tailored. Nothing in this order, however, is intended to limit the ability of any party to develop this issue further in future proceedings.

1 implicate any of the legitimate concerns the ordinance is designed to address. Taken literally, the ordinance also would appear to prohibit a business owner from posting a sign on or even adjacent to the sidewalk encouraging passing motorists to patronize his or her business, conduct more akin to posting a billboard than to the direct personal solicitation the City Council found problematic.

At least with respect to Section 9.12.020(B), the ordinance in this case is significantly broader in its reach than the ordinance upheld by the Ninth Circuit in ACORN v. City of Phoenix, 798 F.2d 1260, 1262 (9th Cir. 1986), the principal case relied upon by the City. The plaintiff in ACORN was engaged in "tagging," a practice of stepping into the street and approaching an automobile when it was stopped at a traffic light. Id. Although the ACORN opinion addresses sidewalk solicitation in a footnote, its principal focus was active solicitation immediately beside or in the roadway. See id. at 1269 & 1269 n.8 (describing the conduct at issue as "direct personal solicitation from drivers" and "standing closely beside your car, peering in the window directly at you, and demanding a personal response from you."). The Court specifically distinguished passive forms of solicitation such as billboards. See id.

Section 9.12.020(B) is also distinguishable from provisions upheld by other circuit courts. See Association of Cmty. Org. for Reform Now (ACORN) v. St. Louis County, 930 F.2d 591, 593 (8th Cir. 1991) (upholding an ordinance that applied to solicitation by persons standing *in* a roadway); International Soc'y for Krishna Consciousness of New Orleans v. City of Baton Rouge, 876 F.2d 494, 495-96 (5th Cir. 1989) (upholding an ordinance that applied to solicitation *on* streets or roadways and the shoulders and neutral ground of streets and roadways); United States Labor Party v. Oremus, 619 F.2d 683, 686 (7th Cir. 1980) (upholding an ordinance that applied to solicitation *on* highways).

The Court concludes that Plaintiffs have demonstrated a likelihood of success on the merits at least with respect to Section 9.12.020(B) of the ordinance. The Court also concludes that because the ordinance contains a severability provision, there is no legal or factual basis in the present record for enjoining enforcement of the remainder of the ordinance. The City may continue to designate "no vehicle solicitation zones" and cite persons who solicit from vehicles in the roadway.

### 2. IRREPARABLE INJURY

Since Plaintiffs have demonstrated a likelihood of success on the merits, a lesser showing of irreparable harm is required. See Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998). Generally, "[t]he loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976); <u>Lydo Enterprises, Inc. v. City of Las Vegas</u>, 745 F.2d 1211, 1214 (9th Cir. 1984). Plaintiffs also allege that the low-income day laborers represented by the Commission are suffering severe economic hardship as a result of enforcement of the ordinance. The City appropriately points to the safety hazards and detrimental economic effects the ordinance was intended to counteract. In light of its conclusion that only a portion of the ordinance violates Plaintiffs' constitutional rights, the Court concludes that the balance of hardships justifies the issuance of the limited injunction described herein.

## IV.  ORDER

Good cause therefore appearing,

The City's motion to dismiss is DENIED. Plaintiffs' motion for a preliminary injunction is GRANTED IN PART AND DENIED IN PART. The City is enjoined from enforcing Los Altos Municipal Code Section 9.12.020(B), but may continue to enforce all other provisions of the subject ordinance. The Court respectfully recommends that the City consider the advisability of amending Section 9.12.020(B) to comport more fully with the requirements upheld by the Ninth Circuit in <u>ACORN</u>. Because both parties in this case have important interests at stake, the Court also strongly encourages the parties to meet and confer to discuss alternative locations for Plaintiffs' activities, taking into account the legitimate concerns of Plaintiffs, the City, and the general public. The Court is more than willing to offer its own assistance in this regard.

Dated: <u>8/2/02</u>  

(<u>Electronic signature authorized</u>)  
JEREMY FOGEL  
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Addresses